JOHN W. HAMLIN, Respondent, v. HENRY DINGMAN, Appellant.

(GENERAL TERM, FOURTH DEPARTMENT, JUNE, 1871.)

A tax assessed for the expense of repairs and additions to a district school-house is valid, although the resolution of the district school meeting, which voted the repairs, &c., failed to specify the amount to be raised for the purpose.

One who receives an appointment to office from a proper authority is an officer *de facto*, though his appointment is informal.

The acts of a mere officer *de facto*, though his being such affords no protection to himself, are valid as to the public, and third persons.

The trustee of a school district having made an appointment of a collector verbally, and issued to him a warrant to collect a tax assessed for school purposes in his district.—*Held*, that the collector was an officer *de facto*, and that the trustee was not liable for his acts in enforcing the warrant.

THIS was an appeal by the defendant from an order of the Special Term granting a new trial.

The complaint was for conversion of the plaintiff's property. The defence was that the defendant was sole trustee of the school district in which the property was taken, and that it was taken and sold for a tax levied against the plaintiff and others for school purposes, by a collector, pursuant to a warrant issued by the defendant to such collector.

The facts appear in the opinion of the court.

*S. Lockwood*, for the appellant.

*Corlett & Taber*, for the respondent.

Present—MULLIN, P. J., JOHNSON & TALCOTT, JJ.

MULLIN, P. J. The inhabitants of school district No. 3 in the town of Elma, in the county of Erie, at a meeting duly

held, voted to repair and paint the school-house of said district, and make certain erections in connection therewith. Portions of the work to be done were let to persons attending the meeting for prices agreed upon and specified in the resolution, other portions were left to be done under the direction of the trustees without any sum being named therefor. There was no resolution directing the collection of any specific sum for the work directed to be done.

The inhabitants had duly elected the defendant as sole trustee of said district, and he was acting as such. They also elected a collector for said district, who refused to accept the office; whereupon the defendant, as trustee, verbally appointed Fowler Munger collector, who gave a bond for the faithful discharge of his duties as such collector. No appointment in writing was made.

The defendant, as trustee, after ascertaining the expense of the repairs, &c., directed to be made by the district meeting, assessed the same upon the taxable inhabitants of said district, as required by law, and amongst others the plaintiff was assessed towards the expense of said repairs, the sum of $73.33. The defendant, as such trustee, issued his warrant for the collection of the tax so assessed to said Munger, so as aforesaid appointed collector, and by virtue thereof he (the said Munger) seized and sold a yoke of oxen belonging to the plaintiff for $75. The plaintiff was the purchaser at said sale.

This action was brought to recover the value of the cattle as having been illegally seized and sold.

The illegality is said to consist in :

1st. The absence of a resolution of the district meeting specifying the amount of money to be raised, and directing the assessment and collection of said sum.

2d. That Munger being appointed collector verbally and not by writing, signed by the trustee, he had no authority to seize and sell by virtue of the warrant issued by defendant.

The judge at the circuit nonsuited the plaintiff. He, the plaintiff, afterwards moved at Special Term for a new trial,

and the same was granted on the ground that the appointment was illegal and void, and the defendant having made the illegal appointment was personally liable to the plaintiff for the damages sustained by plaintiff.

From the order so made plaintiff appeals.

By section 14 of chapter 260 of the Laws of 1841 it was provided that when the trustees of a school district are required or authorized by law, or by a vote of their district, to incur expense for such district, and when any expenses incurred by them are made by express provision of law a charge on the district, they may raise the amount thereof by tax in the same manner as if the definite sum to be raised had been voted by a district meeting, and the same shall be collected and paid over in the same manner.

Under this section it was decided in the case of *Ackerman* v. *Vail* (4 Den., 297), that a tax assessed to collect the expense of building a school-house, after deducting the price received from the sale of an old school-house belonging to the district, was valid, although no precise sum was voted by the district meeting.

The above section was reënacted in chapter 480 of the Laws of 1847, and I do not find that it has been either repealed or modified since. It follows that the tax in this case was legally assessed. To render the justification of the defendant complete, it was necessary that he should prove that the warrant issued by him was put into the hands of a person filling the office of collector of the district.

The rule is, that the delivery to an officer *de facto* is enough, as the acts of an officer *de facto* are valid as to the public and third persons. (See cases collected in 4 Abbott's Digest, title "officer," § 59.)

But an officer *de facto* cannot defend himself by showing that he sold property, or did any other act as such. He must show himself to be an officer *de jure*. (*Conover* v. *Devlin*, 15 How., 477; opinion in case of *People* v. *White*, 24 Wend., 520.)

Assuming for the present that Munger was not so appointed

as to constitute him an officer *de jure*, was he an officer *de facto ?*  An officer is such *de facto* when he has the color of an appointment or election, although it may be in law invalid. It must not be utterly void. (*People* v. *Albertson*, 8 How., 363; *Conover* v. *Devlin*, 15 How., 477; *People* v. *White*, 24 W., 520; see opinions of BRONSON, J., the chancellor and senators.)

The defendant as trustee had the power to appoint a collector, inasmuch as the one elected by the district meeting had refused to serve. The defect, if any, was in the manner. A verbal appointment made Munger, in my opinion, an officer *de facto*.

The appointment was valid, being made by the proper officer; but it was not made in the form required by law. If I am right in this, then the acts of Munger were valid as to these persons and the public. But it is insisted, and the learned judge held at the Special Term, that the defendant having erred in making the appointment, could not insist upon the action of Munger as a protection. To this proposition I cannot assent.

The defendant was not liable to the plaintiff in damages because he made an illegal appointment. He must recover, if at all, because his goods have been illegally seized by order of the defendant. In other words, because the person to whom the warrant was delivered for service was not authorized to execute it.

Enough being shown to constitute him an officer *de facto*, he was in law and in fact capable of making the service as to all the world besides himself. He was none the less an officer *de facto* because the defendant gave him an informal appointment.

Whether a person assuming to discharge the duties of an office is an officer *de facto* or *de jure*, is sometimes a very nice question, and it would be difficult to assign a reason why the person making the appointment should be held liable as a trespasser because he made a mistake as to the mode of appointment. I have been unable to find any case in which such a proposition has ever been advanced, except the case of

*Cummings* v. *Clark* (15 Vt., 653). That was an action for illegally seizing and selling the plaintiff's cow on a warrant issued by the selectmen of the town to collect a highway tax assessed upon the plaintiff. The town had elected a surveyor, whose duty it was to enforce such warrants. He refused to give the selectmen a receipt for the warrant, whereupon they appointed another, treating the refusal to give a receipt for the warrant as a non-acceptance of the office. By a statute of Vermont the selectmen had power to appoint a surveyor in case of non-acceptance of the office by one chosen to that office, and in case of death, removal, insanity or other disability. The action was brought against the selectmen and the surveyor appointed by them. The plaintiff had a verdict for the value of his cow. On appeal the judgment was affirmed. It was contended by the defendants' counsel that the surveyor appointed by the selectmen, if not surveyor *de jure*, was such *de facto*, and his title to the office could not be inquired into in a collateral action.

The court after deciding that the appointment by the selectmen was unauthorized, and hence that he was not an officer *de jure*, seem to hold that he was an officer *de facto*, as to all third persons except the persons making the illegal appointment. They were no more protected than was the appointee himself.

No authority is referred to in support of the proposition. I have examined with some care, to find a case in support of the ruling of the court, but I have not been successful.

Why should the persons making the appointment be deprived of the protection which a colorable appointment gives to all other third persons? Is it because they make the appointment? To enable those who make an appointment that will make the appointee an officer *de facto;* they must have the legal capacity to make it, but by reason of some defect in the time or manner of the appointment have failed to make a valid one.

This may be the result of an innocent mistake on their part, or of some disqualification on their part of the person

Hamlin *v.* Dingman.

appointed wholly unknown to them. They should not suffer for doing what they supposed the law required them to do. It would not be contended that persons, who applied for the appointment of the officer, should be deprived of the protection which the acts of the officer *de facto* affords to the public. They stood upon precisely the same footing as the persons making the appointment.

The persons making the appointment may be presumed to know of its irregularity, and if knowledge of the irregularity is sufficient to charge those who appoint, it should extend to all who are cognizant of the defect. To deprive those who make the appointment of the protection afforded by the acts of the person appointed, would be to punish them in damages for their irregular action.

When the officer is in under color of an election by the people, are all those voting for him to suffer if it turns out that the election was illegal?

Without occupying more time in the discussion of the question, I am constrained to dissent from the conclusion arrived at in the case of *Cummings* v. *Clark*, and to hold that, the acts of an officer *de facto* protect the persons appointing him as well as the public.

As a general rule, the right of a ministerial officer cannot be inquired into in an action between third persons. (*Hall* v. *Luther*, 13 Wend., 491.)

Therefore, it is that a party justifying under the act of one who is discharging the duties of an officer is only required to prove that he was reputed to be an officer, and when an appointment is to be proved it may be proved by parol, although a statute may require it to be in writing. This proposition was directly decided in *Edwards* v. *Buchanan* (3 B. & Ad., 788), and again in *Regina* v. *Carter* (47 E. C. L., 741).

The order granting a new trial must be reversed with costs.

Order reversed.