IRA M. OLMSTED, Appellant, *v.* GEORGE W. DENNIS et al., Respondents.

*It seems* that a public officer, charged with the performance of ministerial duties, who fails to discharge those duties with reasonable skill and care, is liable for the damages resulting from such failure to one specially interested in the discharge of the duties.

The provision of the Revised Statutes (1 R. S., 117, § 9) declaring that an officer "shall continue to discharge the duties of his office, although his term of office shall have expired, until a successor in such office shall be

Statement of case.

duly qualified," applies only where a term of office has expired; not to a case of vacancy caused by resignation.

An officer *de facto* cannot be compelled to act, and will not incur any liability by his mere omission so to do.

Drainage commissioners appointed under the act of 1869 (chap. 888, Laws of 1869), cannot levy and collect an assessment for the expense of a drain until they have acquired a sufficient title to the lands required therefor. The persons to be benefited can only be assessed for a drain lawfully constructed, and which can be perpetually maintained.

A license from the owners of the land to construct the drain does not vest any title or give any irrevocable easement in the land.

The statement required by section 10 of said act, to be made and filed by the commissioners, of the costs, expenses, etc , is to be made after the whole work is completed, or, at least, after it is in such a condition that the entire expense of its completion can be accurately ascertained ; and is to be of the entire expense, as it is the basis of the assessment therefor.

A commissioner, appointed under said act, has a right to resign ; his resignation is complete when it is received by the county judge ; no formal acceptance by the latter is needed to give it effect; and, after such resignation, the person so resigning cannot legally act as commissioner.

Defendants, who were appointed drainage commissioners under said act, in pursuance of its provisions borrowed of plaintiff $250, and gave him a certificate therefor, stating that it was payable " on the completion of the collection of assessments " in the matter of the drainage. In an action to recover damages for alleged negligence on the part of the defendants in the discharge of their duties as commissioners, it appeared that defendants commenced the construction of the drain, using the money so borrowed therefor. They did not pay for or acquire title to the lands on which it was constructed, but entered upon the lands and upon the work of construction under a license from the owners. The work, so far as appears, was prosecuted with reasonable diligence, and it was not completed, November, 1874, when defendant C. filed his resignation of the office with the county judge. His successor was not appointed until January, 1876. C. continued to act as commissioner after his resignation, and joined with the others in making a detailed statement of costs, expenses, etc., which was filed in March, 1875, but was not verified. They also filed an assessment of the amount shown by such statement. *Held*, that the provision of the act (§ 9) requiring that lands taken in the construction of a drain shall be paid for before the commencement of the work was for the benefit of the owners, and they could waive it ; that as defendants entered by license, they were not trespassers, and title could yet be acquired ; hence, that their omission of duty, in this respect, did no material harm to the plaintiff ; that there was no default on the part of defendants in not making the statement of costs and expenses before the resignation of C., as the work was not completed, or the land damages ascertained ; that C. did not incur any liability to the plaintiff for anything he did or omitted to do after his resignation ; that the other two defendants could take no legal action in making and col-

lecting an assessment, after the resignation, so long as the vacancy existed, and all that was done was null and void ; and that as there was no allegation or proof of any omission of duty on their part after such resignation, and before the commencement of the action, no cause of action was established against them.

(Submitted April 25, 1879 ; decided May 20, 1879 )

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the facts are set forth sufficiently in the opinion.

*T. W. Collins,* for respondents. Defendant Cook was not a commissioner after his resignation was received by the county judge. (1 R. S., 413, § 38, sub. 6; id., § 40, sub. 2; *Gilbert* v. *Luce,* 11 Barb., 91.) Defendants' omission to obtain written title to right of way for constructing the ditch did not invalidate subsequent proceedings by them, or render them personally liable. (Laws of 1869, chap. 888, § 9; *People ex rel. Williams* v. *Haines,* 49 N. Y., 587; *People* v. *Nearing,* 27 id., 306.) A private action will not lie for omission of duty on the part of a public officer. The remedy is by mandamus. (*Gould* v. *Booth,* 2 N. Y. W'kly Dig:, 447.) A parol license to construct the ditch having been acted upon could not be revoked. (*People* v. *Goodwin,* 1 Seld., 568.)

*Wm. Roe,* for appellant. Defendants, as commissioners of drainage, were public officers. (Laws 1869, chap. 888, § 3; *People* v. *Hayes,* 7 Hun, 248; *People* v. *Compt'r,* 20 Wend., 595; 2 Cow., 30*n* ; 5 Bac. Ab., 180; 2 Tom. Dic., "Officers ;" *People* v. *Bedell,* 2 Hill, 199; BEST, Ch. J., in *Hinley* v. *Mayor of Lynn,* 5 Bing., 91; *Robinson* v. *Chamberlin,* 34 N. Y., 398; *Hicks* v. *Iran,* 42 id., 47, 53; *McCarthy* v. *The City of Syracuse,* 46 id., 196, citing *Adsit* v. *Brady,* 4 Hill, 630; *Robinson* v. *Chamberlin,* 34 N. Y., 389;

*Hutson* v. *Mayor, etc.,* 9 id., 169; *Fulton Fire Ins. Co.* v. *Baldwin,* 37 id., 648; *Hover* v. *Barkhoff,* Ch. Ap. Com.; *Barton* v. *City of Syracuse,* 36 N. Y., 54; *Hover* v. *Barkhoff,* 44 id., 113; *Musterdon* v. *Village of Mt. Vernon,* 58 id., 391; *Nelson* v. *Mayor of N. Y.,* Den., 595; *Rochester White Lead Co.,* v. *The City of Rochester,* 3 N. Y., 463; *Clark* v. *Miller,* 54 id., 534; *McCullough* v. *Mayor of Brooklyn,* 23 Wend., 461; *Mason v. Lord,* 40 N. Y., 484.) A mere parol license was entirely insufficient to authorize the building of the ditch. (*People* v. *Haines,*
*Eggleston* v. *N. Y. and H. R. R. R. Co.,* 35 Barb., 162; 15 Wend., 380; 4 J. R., 418.) Mandamus was not the proper remedy. (*People* v. *Board of Apportionment* 64 N. Y., 627; *People* v. *Supervisors of Chenango Co.,* 11 id., 573; *People* v. *Hawkins,* 46 id., 11; *People* v. *Green,* 1 Hun, 1; *People* v. *Board of Apportionment,* 3 id., 11; *People* v. *Canal Board,* 4 Lans., 275–276: *People* v. *Green,* 1 Hun, 14.)

EARL, J. The defendants were appointed drainage com-
missioners by the county judge of Wayne county in July, 1872, under the act chapter 888 of the Laws of 1869 ; and under section eight of that act, with the approval of the county judge, in August, 1873 they borrowed of the plain-
tiff $250, and gave him a certificate for the same certifying that it was payable to him, with interest, " on the completion of the collection of assessments " in the matter of the drain-
age. This action was brought to recover the sum thus bor-
rowed of the defendants personally, on the grounds " that by means of the negligent acts " of the defendants mentioned in the complaint, and " by reason of their not faithfully comply-
ing with the provisions " of the act, the plaintiff " has not been paid the said sum borrowed of him." The action is really one to recover of the defendants damages which the plaintiff claims to have sustained from their misconduct and negli-
gence, in the discharge of their duties as public officers under the drainage act.

It cannot be disputed that if the plaintiff has lost his debt, by reason of the misconduct or negligence of the defendants as public officers, he has his remedy against them for his damages : (*McCarthy* v. *City of Syracuse*, 46 N. Y., 196; *Adsit* v. *Brady*, 4 Hill, 630; *Hover* v. *Barkhoof*, 44 N. Y., 113; *Clark* v. *Miller*, 54 id., 528.) It is not needful in such a case to show that the public officer, charged with the performance of ministerial duties, has acted willfully or maliciously. Such an officer is under constant obligation to discharge the duties of his office with reasonable skill and care ; and if he fails in these, and damage ensues to one specially interested in the discharge of such duties, he becomes liable for such damage.

The claim of the defendants is that there has been no misconduct or negligence on their part which has materially damaged the plaintiff, and to determine whether there has been or not, we must look at the facts as found by the referee, and also see what the duties of the defendants were under the drainage act.

Sections one and two of the act provide that the county judge of the county in which the lands to be drained are located, may upon proper application appoint three drainage commissioners, who are " to hear and determine, first, whether it is necessary, in order to drain such lands, that a ditch or ditches, or other channels for the free passage of water, should be opened through lands belonging to others ; second, whether it is necessary for the public health that such lands shall be drained ; " and to take such further steps, in reference thereto, as are provided afterward in the act. Section three provides that the commissioners shall, before they enter upon their duties, take and file in the county clerk's office an official oath ; that they shall then meet and organize, by appointing one of their number chairman and another treasurer of the commission ; that the treasurer shall collect and receive and pay out all the moneys ; and where the moneys to be collected or received will exceed $500, he is to give a bond, with sureties to be approved by the county judge, and to be

filed in the office of the county clerk. Section four provides that the commissioners shall, after notice to the petitioners and the parties named in the petitions, in such manner as they shall order, proceed, by personal view of the lands and otherwise, to determine whether it is necessary, in order to drain such lands, that a ditch or ditches should be opened, and whether it is necessary for the public health that the lands should be drained. Section five provides that the commissioners shall file in the county clerk's office their determination signed by them, and give notice of such filing to all whom it may concern, in the manner specified. Sections six and seven provide that if the commissioners shall determine that drains shall be opened, it shall be their duty to cause a survey of all the lands to be made, and a map thereof to be made in the manner specified, which, upon the completion of the work, they shall certify and cause to be filed in the county clerk's office. Section eight provides that the commissioners shall have each three dollars per day for their services; that they shall keep an account of all their expenses incurred in the drainage of the lands and in the discharge of their duties; and that in case it shall be necessary to raise funds before the assessment which is authorized in the act can be made and collected, they are empowered, with the approval of the county judge, to borrow money upon such evidence of indebtedness as they may deem proper, payable on completion of the assessment and collection. Section nine provides that any person whose land is taken in the construction of any drain, shall be paid by the commissioners, on or before the commencement of the work, the value of the land taken; and that if the commissioners cannot agree with any person upon the compensation to be paid for land, they may acquire the land by proceedings for that purpose. Section ten provides that the commissioners shall, as soon as the costs, expenses, land damages and compensations can be ascertained, make a detailed statement thereof duly verified; and that and subsequent sections provide for the assessment and collection of the amount shown by such statement to be needed.

In the case as settled, it is stated as follows : "Upon the trial before the referee, many items of testimony were introduced, some of which are covered by the referee's report and not herein inserted, and among those submitted to the referee are the following;" and then follows the evidence contained in the case, but there is no statement that all the evidence is inserted. In such a case, we can look only to the facts found by the referee ; and so far as they are material now, they are as follows : The defendants, Dennis and Edwards, and Benham S. Wood, were first appointed commissioners in July, 1872, and they entered upon the discharge of their duties as such commissioners, and after notice to the proper parties in August, 1872, made and filed in the county clerk's office, their determination that the drain was necessary, as prescribed in section four of the act ; and they gave notice of such determination, as prescribed in section five of the act. They also caused the survey and map to be made, as required by the act. Before further steps were taken, in January, 1873, Wood resigned and defendant Cooke was appointed in his place. The defendants then proceeded with the work upon the drain, and with the approval of the county judge, borrowed the money mentioned in the complaint of the plaintiffs, which they used in the construction of the drain. They commenced such construction in the spring of 1873, and continued the work that year and in the year 1874, constructing a drain about two and one-half miles. The last work was done in the fall of 1874, and the drain was not then fully completed. Work upon the drain could be prosecuted only from about July to the middle of September. There was no evidence that the work upon the drain was not prosecuted with reasonable diligence ; and the referee refused to infer or find that it was not. The defendants took no steps to acquire the title to the land upon which the drain was constructed, and made no agreement for compensation for the value of the land taken for the drain with any of the owners thereof ; but they constructed the drain by the license of the owners.

In November, 1874, the defendant Cook filed with the county judge his resignation of the office, which resignation was also filed in the office of the county clerk, December 1, 1874 ; and his successor was not appointed until January, 1876. After his resignation, he continued to act as commissioner, and he joined with the other two defendants in making a detailed statement of costs, expenses and compensation of the commissioners, which they filed in the county clerk's office, March 3, 1875 ; but it was not verified by any of them. They also made, and on the same day filed in the same office, an assessment of the amount shown by such statement upon the several owners of land adjudged by them to be benefited by the drainage, in proportion to benefits. The referee also found that the commissioners had acted in good faith in all their proceedings.

We will now notice the acts of negligence particularly charged against the defendants. 1. It is alleged that they did not make the survey and map, as required by section six of the act. It is sufficient to say as to this that the referee has found that they did ; and that there is no allegation in the complaint that they did not. No map appears to have been filed as required by section seven ; but it was not required to be filed until the completion of the work, and that was not completed. 2. It is alleged that the defendants did not pay for or acquire the title to the lands on which the drain was constructed. They could not levy and collect any assessment for the expense of the drain until they had acquired a sufficient title to such lands. The persons to be benefited could be assessed only for drains lawfully constructed, and which could be perpetually maintained : (*The People ex rel. Williams* v. *Haines*, 49 N. Y., 587.) The license to construct the drain did not vest any title or give any irrevocable easement in the land : (*Eggleston* v. *N. Y. and Harlem R. R. Co.*, 35 Barb., 162.) But they entered upon the lands and constructed the drain, by the license of the owners. Hence they were not trespassers. They did not refuse to pay for the lands or to acquire the title thereto. They simply, under

a misapprehension of the law, omitted to do so. The provision that the land should be paid for before the commencement of the work was for the benefit of the owners, and they could waive it. The title can yet be acquired, either by voluntary agreement or by proceedings *in invitum* under the act. Hence this omission of duty did no material harm to the plaintiff. 3. It is also alleged that the defendants did not, in compliance with section ten, make and file a detailed statement verified of the costs, expenses, land damages and compensations in and about the construction of the drain. The statement thus to be made is to be a complete one, and the section requires it to be made as soon as the costs, expenses, etc., "can be determined and ascertained." This is a statement to be made after the whole work has been completed, or is at least in such condition that the entire expense of its completion can accurately be ascertained. The statement is to be the basis of the assessment to be made for the entire expense of the drain, and cannot, therefore, be made until such expense has become known. In the fall of 1874, when the defendant Cook resigned, the work was not completed, the land damages were not ascertained, and there is no proof that the entire expense could then be ascertained. Hence there was no default in not making the statement before that time. 4. The further claim is made that the defendants were in fault in not levying and collecting assessments for the expense of the drain, and thus procuring the funds to pay the plaintiff. As shown above, at the time of the resignation of Cook, the drain was not completed, the statement of the expense thereof had not been made, and the time had not yet come for levying the assessments ; and hence there was no default before that time in the respect mentioned. 5. But it is claimed that what transpired after the resignation of Cook has an important bearing upon the liability of the defendants. Cook's resignation was properly made to the officer who appointed him, and the moment it was thus made, his office became vacant. (1 R. S., 122; *Gilbert* v. *Luce*, 11 Barb., 91.) The resig-

nation was complete when it was received by the county judge, and no formal acceptance by him was needed to give it effect. In *Gilbert* v. *Luce*, Judge GRIDLEY said that an office " becomes *ipso facto* vacant by such resignation." The section of the Revised Statutes (1 R. S., 117, § 9) which provides that an officer " shall continue to discharge the duties of his office, although his term of office shall have expired, until a successor in such office shall be duly qualified " applies only to the case of the expiration of the term of office, and not to a case of vacancy caused by resignation. Cook had the right to resign. He was not bound to remain in office for the benefit of the plaintiff; and he could not legally act as commissioner after his resignation. Even if we assume that he became a commissioner *de facto*, it would not aid the plaintiff. A *de facto* officer can never be compelled to act. He may stop short at any time in his official action, and will incur no liability by his mere omission to act. (*Bentley* v. *Phelps*, 27 Barb., 524.) His acts are valid as to the public by whom he is permitted to act, and as to third persons; but they are void as to himself. (*Riddle* v. *The County of Bedford*, 7 Serg. & Rawle, 386; *The People* v. *Hopson*, 1 Den., 574; *Hamlin* v. *Dingman*, 5 Lans., 61; *The People ex rel. Henry* v. *Nostrand*, 46 N. Y., 375.) Cook could not, after his resignation, unite in making an assessment which could be enforced. It is clear, therefore, that he did not incur any liability to the plaintiff for anything that he did or omitted to do, after his resignation; and as he had not incurred any, as shown above, before his resignation, no cause of action was shown against him.

The other two defendants could take no legal action in making and collecting an assessment after the resignation of Cook, so long as the vacancy existed. The vacancy was was not filled until January, 1876, and this action was commenced in March afterward; and there is no allegation or proof of any omission of duty on their part between January and March, and hence no cause of action was shown against them.

All that was done by the defendants, after the resignation of Cook, was null and of no effect. It did the plaintiff no harm. The commission now being full, the commissioners can proceed under the act and acquire title to the land upon which the drain has been constructed; and they can make and file a proper, detailed, verified statement of the costs and expenses, and proceed to make and collect an assessment for the payment of the amount thereof. If they neglect or refuse to do this, then the plaintiff may take his remedy in the proper form. At the time of the commencement of this action, he had suffered no damage which he can charge upon these defendants.

The judgment should be affirmed, with costs.

All concur, except RAPALLO, J., not voting.

Judgment affirmed.