JOSEPH W. CATLIN, AS ADMINISTRATOR, ETC., OF ALDICE P. WARREN, DECEASED, PLAINTIFF, v. LYDIA A. MUNN, AS ADMINISTRATRIX, ETC., OF JOHN H. MUNN, DECEASED, DEFENDANT.

*Contract for work — agreement to accept payment in certificates of public officers — when the validity of the certificates is an implied condition of the contract.*

In 1873 the defendant's intestate, Munn, entered into a contract with three commissioners, appointed by the county judge of Wayne county, to drain certain low lands, by which he agreed to dig and construct a ditch, of a certain size and length, and to receive in payment therefor certificates of indebtedness to be issued by the commissioners payable upon the completion of the work and the collection of the assessment. Thereafter, Munn entered into a written contract with certain other persons by which they agreed to dig and construct a portion of the ditch, Munn agreeing to pay them therefor " the sum of one dollar and seventy-five cents per rod for said ditch constructed or dug as above specified, one-half to be paid in cash on completion of each section of fifty rods, the remaining half to be paid in certificates of indebtedness on completion of the entire job above specified."

The parties to the second contract having fully performed the same on their part, received from Munn the cash payment and the certificates of indebtedness issued by the commissioners, both parties believing the said certificates to be valid instruments. The certificates were not paid, nor could the assessment be collected by reason of the fact that the proceedings were void because of the absence of any determination having been made that the contemplated ditch was for the benefit of the public health. .

In this action brought by the plaintiff, to whom the parties contracting with Munn had assigned their certificates, together with their claims for services

rendered under the contract, against the administrators of Munn to recover the amount unpaid upon their contract:

*Held*, that as the contract contemplated a payment in valid certificates lawfully issued and collectible, and as those delivered were invalid, the plaintiff was entitled to recover. (HAIGHT, J., dissenting.)

That the fact that the commissioners might be personally liable for the issue of the illegal certificates furnished no defense to the defendant.

MOTION by the plaintiff for a new trial on exceptions taken at Wayne Circuit, and ordered to be heard at the General Term in the first instance.

*J. H. Camp*, for the plaintiff.

*L. M. Norton*, for the defendant.

BRADLEY, J. :

The proceedings for drainage were sought to be instituted and conducted under the statute (2 R. S., 548, as amended by Laws of 1869, chap. 888 ; Laws of 1871, chap. 303), but it was not alleged in the petition, nor does it appear that it was determined that the contemplated drains, ditches or channels were for the benefit of the public health, and for want of such determination the proceeding was without jurisdiction and void. (*Burk* v. *Ayers*, 19 Hun, 17 ; *Matter of Ryers*, 72 N. Y., 1.) The defendant's intestate having taken from the commissioners appointed the contract for construction of the drain or a portion of it, employed the assignors of the plaintiff's intestate to construct a section of it at the price of one dollar and seventy-five cents per rod, and to pay them one-half in cash and the residue in certificates of indebtedness, which they agreed to accept.

They entered upon the performance of the work and did it, and the defendant's intestate paid them one-half in money, and procured from the commissioners named in the proceeding and delivered to them as payment of the other half, and they received, what purported to be certificates that such amount was due, and with interest to be paid on the completion of the collection of the assessments, etc.

This action is brought to recover for the services performed by the assignors of the plaintiff's intestate under such employment, and is founded on the alleged fact that the proceedings in which the commissioners were appointed was void and the certificates made

by them and delivered as before mentioned, were invalid. Assuming, as we do for the purposes of this review, that the proceedings were void for want of jurisdiction, the question arises whether the delivery by the defendant's intestate of the certificates of the commissioners was such performance by him of his agreement as to relieve him from liability. The trial court held it was, and directed a verdict for the defendant. It is evident that the parties to the agreement of employment had in view certificates of indebtedness to be issued by the commissioners so appointed in the proceedings, and by whom they were in fact issued; and it may be assumed that when those certificates were taken by defendant's intestate and delivered to those persons by him so employed, in payment for the one-half of their services, he and they believed them valid, and they received them as such, and then treated them as payment. So that the sole question for consideration is: were they certificates of indebtedness within the meaning of the agreement for employment and payment for services? If they were, the matter of their value has no importance, the delivery of them would be treated as performance on the part of the employer and as satisfaction for the services. (*Bates* v. *Cherry V., S. and A. R. R. Co.*, 3 T. & C., 16; affirmed 59 N. Y., 641; *Reed* v. *Bartlett*, 19 Pick., 273.) And the rule applicable to the taking and acceptance of choses in action in payment of a precedent debt does not govern. In that case the creditor has an existing liability of his debtor and is entitled to payment. And the delivery and acceptance of the note or obligation of another in satisfaction of the debt may not operate as a discharge of it, if it turn out that the third party was then insolvent, and his note or obligation had been delivered and accepted in ignorance of that fact and by mutual mistake of understanding in that respect. And that is put upon the broad principles of justice "that a man should not be allowed to pay a debt with worthless paper, though both parties supposed it to be good." (*Roberts* v. *Fisher*, 43 N. Y., 159; S. C., 53 Barb., 69.) This proposition is founded upon the right of rescission of the agreement pursuant to which the delivery of the worthless paper is made, taken and accepted in satisfaction of the debt. (*Baldwin* v. *Van Deusen*, 37 N. Y., 487.) The same rule is applicable to a debt upon which have, under like circumstrnces, been paid and received the bills of an insolvent bank. (*Lightbody*

*v. Ontario Bank*, 11 Wend., 9; S. C., 13 id., 101; 27 Am. Dec., 179; *Wainwright* v. *Webster*, 11 Verm., 576; 34 Am. Dec., 707; contra, *Bayard* v. *Shunk*, 1 Watts & Sergt., 92; 37 Am. Dec., 441.) But it is somewhat different when, by the contract out of which the liability to pay arises, the manner of payment is designated and agreed upon. Then the fact that the third person whose paper, by the arrangement, is to be delivered and accepted has, at the time for payment, become insolvent, may not defeat the right to tender and pay it in performance and satisfaction, and likewise the party having received it in payment may not have any remedy based upon the mere fact of such insolvency, although unknown to either at the time of its receipt. In such case the undertaking of the person agreeing to pay in the note or obligation of another is only that it shall be his genuine paper. (*Whitbeck* v. *Van Ness*, 11 Johns., 409; *Gibson* v. *Tobey*, 46 N. Y., 637; S. C., 53 Barb., 191; *Hardin* v. *Kretsinger*, 17 Johns., 293.)

This rule, however, may not be so applied as to require performance of an executory agreement by the party who has agreed to accept in payment the note of a third person, when before such performance it turns out that the maker of the note has become insolvent. The consideration in such case may be deemed to have failed, and upon that ground performance and acceptance of such paper may be refused. (*Roget* v. *Merritt*, 2 Caines' Rep., 117; *Benedict* v. *Field*, 16 N. Y., 595.)

In the case at bar there was a performance of the services, and by the agreement to pay in the certificates of indebtedness there was an accord to that extent, with the right to make satisfaction by the delivery of them. Those delivered, it may be assumed, had the form and appearance of the instruments which the employer had agreed to deliver, and they were accepted as well as delivered upon the faith that they were in fact those provided for by the contract and within the contemplation of the parties when they made it. The difficulty is that they were not certificates of indebtedness, because they were issued without authority. They were not in the legal sense genuine instruments. It was not necessary that they should be forgeries to deny to them the quality of legitimate certificates of indebtedness. To make them such required the

power to issue them. It was understood that they should come from representative or official action of individuals clothed with the requisite authority. A promise to deliver the note of A., executed by B. as his attorney, would not be performed by delivery of a note purporting to have been executed in the name of A. by B., without any authority of the latter to execute it as such. It would not be the note of A. within the meaning of the promise. And here the agreement to deliver and accept in satisfaction certificates of indebtedness embraced the understanding that to be such they should be genuine — that they should be what their terms purported, in so far as related to the power exercised in the issuing of them. In *Shearer* v. *Fowler* (7 Mass., 31), it was held that the consideration paid for a deed executed without authority might be recovered back. In that case that which purported to be a deed was not such, because of want of power to execute it. And there is the distinction between that case and *Reed* v. *Bartlett* (*supra*). In the latter the deed conveyed nothing, yet the party paying for it was not permitted to recover the consideration paid.

It seems quite clear that if there was no authority to issue the instruments in question they were not certificates of indebtedness within the meaning of the agreement referred to. The defendant's intestate agreed to pay the men who did this work a specified price. They are entitled to recover, except so far as it shall appear they have been paid. It is said by the defendant's counsel that if the persons acting as commissioners had no authority to issue the certificates, there may be a remedy against them personally, to which the holders of them may resort.

Whether there is any and what liability of those persons is not a question arising here. The parties whose services were performed did not contract for the personal liability of those persons, and the certificates made purport to create none. If they are liable at all it is probably for damages upon a state of facts not necessarily appearing in this action, rather than on any agreement on their part to pay. (*Olmsted* v. *Dennis*, 77 N. Y., 378.) But we do not express any opinion on that question.

The conclusion seems to follow that a new trial should be granted, costs to abide event.

BARKER, J., concurred.

CORLETT, J.:

On the 9th day of June, 1873, a petition was made, of which the following is a copy:

" To the Honorable L. M. NORTON, *Wayne County Judge :*

" We, the undersigned petitioners, would respectfully show your honor that we are owners and occupants of some low, wet swamp bog and meadow lands, situate in the north part of the town of Lyons, county of Wayne, New York, and that we are desirous of draining the same under the Revised Statutes, as amended. Your petitioners would further show that the following persons would be affected by the ditch or channel for the free passage of water: Silas Potter, Clark Reynolds, Conrad Youngs, George Still, Peleg Randall, Timothy W. Brown, Oliver Penoyar, George Hopper, Otis Watson, Mrs. John Munn, Riley and John A. Merchant, William Armitage, Alvin June, Daniel Jennison and Levi Whitlock. Your petitioners respectfully ask your honor to appoint a commission to hear and determine the matter as above mentioned, for which we will ever pray.

" We, the undersigned, have read the foregoing petition and ask your honor to grant the same.

" Dated LYONS, *June* 9, 1873.

" GEORGE STILL.          RILEY & JOHN A. MERCHANT.
" PELEG RANDALL.         WILLIAM ARMITAGE.
" OLIVER PENOYAR.        SILAS POTTER."

It was verified on the twelfth day of June of the same year.

On this petition the county judge or court made an order appointing George W. Dennis, Sidney G. Cook and Clark S. Edwards commissioners. Afterwards the commissioners made a verbal contract with John H. Munn to dig a ditch, which was to the effect that Munn should be paid with the certificates of indebtedness on the ditch, payable upon the completion and the collecting of the assessment. He was to receive two dollars and fifty cents per rod for digging the ditch. Afterwards and on the 26th day of August, 1874, Munn made a contract in writing with W. Facer, H. Travell, George Bridges, L. Dudley and Joseph Bridges. Munn was designated as party of the first part in the agreement. It provided, among other things, as follows: " The party of the first part agrees

to pay to parties of second part the sum of one dollar and seventy-five cents per rod for said ditch constructed or dug as above specified, one-half to be paid in cash on completion of each section of fifty rods, the remaining half to be paid in certificates of indebtedness on completion of the entire job above specified."

The parties to the agreement above named completed their work, as provided by the contract, in the fall of 1874, after which Munn paid them one-half in cash and the balance in so-called certificates of which the following is a copy :

## "WAYNE COUNTY COURT.

"IN THE MATTER OF THE APPLICATION OF GEORGE STILL ET AL.

"For draining low, wet, swamp, bog and meadow lands in the town of Lyons and Galen, under the Revised Statutes as amended.

"*Whereas*, upon the petition of George Still *et al.*, his honor M. Norton did issue, on the 13th day of June, 1873, a commission appointing George W. Dennis, Sidney G. Cooke and Clark S. Edwards commissioners in said matter ; and

"*Whereas*, said commissioners, on the —— day of ————, 1874, did file in Wayne county clerk's office a determination to drain said lands, and in pursuance thereof did contract with J. H. Munn for the construction and digging of a part of said ditch.

"*Now, therefore*, we, the said commissioners, hereby certify there is due to J. H. Munn, or order, the sum of ———— and ———— dollars, with interest, to be paid on the completion of the collection of assessments in said matter.

"Given under our hands this 31st day of October, 1874.

> "C. S. EDWARDS,
> "SIDNEY G. COOKE,
> "GEORGE W. DENNIS,
> "*Commissioners of Drainage.*"

Munn indorsed and delivered to each person signing the contract (after the cash payment) a certificate for the amount, his due, in the above form. Each one accepted the same upon the assumption and belief that it was a certificate of indebtedness contemplated by the contract, and it was indorsed and delivered by Munn on the same assumption and belief. The holders of the certificates delivered

them to the plaintiff's intestate in payment for goods. Afterwards each of those persons assigned to the plaintiff's intestate his claim for work and labor on the ditch.

The contention on the part of the plaintiff is that the persons appointed were never authorized to issue the certificates, because neither the commissioners nor County Court determined that the proposed drainage was necessary for the public health. That this being so, the instruments issued by them were not certificates of indebtedness, but were nullities. In other words, that the instruments purporting to be certificates of indebtedness, were never made or issued by persons authorized to do so. It seems to be assumed that the commissioners had no power to act in that capacity in making and issuing certificates.

The question was so decided in *Burk* v. *Ayers* (19 Hun, 17, Fourth Dept., Oct., 1879). The defendants claim is that by the terms of the contract one-half was to be paid in certificates; that payment was made and that no recovery can be had even though the certificates were nullities. The agreement provides that one-half shall be paid in certificates of indebtedness. If these instruments were not certificates within the meaning or contemplation of the contract, then no payment was made. It is true that the instruments delivered purport to be such certificates. It is equally true that they were not such certificates, because the commissioners had no power to issue them.

It is a familiar rule that upon the sale of a written obligation there is an implied warranty by the vendor of the genuineness of the instrument. (*Bell* v. *Dagg*, 60 N. Y., 528.) The duty, therefore, devolved upon Munn, both by the expressed terms of his contract and upon the theory of an implied warranty, to deliver genuine certificates. The ones delivered were not genuine certificates. The persons signing them had no power, in the capacity in which they assumed to act, to make them.

It is, therefore, like the case of a forged note or bill, and must be governed by the same principles. (*Frank et al.* v. *Lanier et al.*, 91 N. Y., 112.) The fact that the commissioners believed they had power and that they acted in good faith is immaterial; their honesty of purpose imparted no legal inception to the instruments any more than if they were forged. (*Gibson* v. *Tobey et al.*, 46 N. Y.,

635, and the like cases are distinguishable in that.) In all those cases the note was *genuine ;* it had *legal inception,* and was made by the person purporting to make it. A different rule therefore applies then, where there is no maker, or where the instrument never had legal inception. These papers did not purport on their face to be the individual obligation of the persons signing them, but rather the acts of those individuals in an official capacity.

The persons receiving them assumed, and had a right to assume, that they were made by the persons signing them in their official capacity ; that they had a right to make the instruments in that capacity ; that they were valid instruments the payments of which could be inforced out of the property drained. Each instrument contains the following : " To be paid on the completion of the collection of assessments in said matter." Thus showing that each purported on its face to be payable out of moneys to be collected from those benefited by the drain. The persons to be benefited could be assessed only for drains lawfully constructed and which could be perpetually maintained. (*People ex rel. Williams et al.* v. *Haines et al.* 49 N. Y., 587.) It may be that the commissioners are personally liable to the defendant for the value of digging the ditch. (*Olmsted* v. *Dennis et al.,* 77 N. Y., 378 ; *Mitchell* v. *Strough et al.,* 21 Weekly Dig., 225.) But that liability would rest upon the negligence of the commissioners in assuming to issue, in an official capacity, certificates which were nullities for want of power to issue them. But such liability is no answer to this action.

This was brought to recover the value of services performed for Munn. The answer is payment. The contention involves the simple question, whether these instruments when indorsed and delivered operated as full payment. If the plaintiff succeeds it may be that the defendant can obtain redress from the commissioners. But this plaintiff cannot be turned out of court in case the debt has not been paid, simply because the commissioners may be liable to the defendant. Besides, the trial justice did not place the direction of a verdict on any such ground. He was requested to direct a verdict for the plaintiff. Also to submit to the jury whether Munn ever paid the five persons named in the contract for the labor they performed. Also, whether he delivered to those five persons such certificates of indebtedness as was contemplated by

the contract.   Each request was denied and an exception taken.   A verdict then was directed in favor of the defendant.   The ruling at the circuit amounted to a determination, as matter of law, that the certificates amounted to an absolute payment of the balance. due for labor.

A new trial must be granted, with costs to abide the event.


HAIGHT, J. (dissenting):

On the 13th day of June, 1873, George Still and others presented a petition to the county judge of Wayne county praying for the appointment of commissioners to drain certain low, wet, swamp and bog lands situated in the town of Lyons, in that county.   The County Court thereupon appointed George W. Dennis, Sidney T. Cook and Clark S. Edwards drainage commissioners.   Thereafter and on the 17th day of June, 1873, the commissioners made and filed their determination, in which they determined to drain the lands described in the petition.   Subsequently the commissioners entered into a contract with John H. Munn, the defendant's intestate, to dig and construct the proposed ditch, and agreed to pay him therefor a stipulated price in their certificates of indebtedness.   Thereupon Munn entered into a written agreement with W. Facer, H. Travell, George Bridges, L. Dudley and Joseph Bridges to dig and construct a part of the ditch and agreed to pay them therefor the sum of one dollar and seventy-five cents per rod, one-half to be paid in cash on the completion of each section of fifty rods, the remaining one-half to be paid in certificates of indebtedness on the completion of the entire job.   Facer, Travell and others thereupon entered upon the performance of their contract and dug as much of the ditch as they agreed to dig, and Munn in the performance of his contract paid them therefor one-half in cash and the other half in the certificates of indebtedness, issued to him by the drainage commissioners.

It appears from the undisputed evidence in the case that the certificates of indebtedness mentioned in the contract were certificates which were to be issued by the commissioners of drainage· The certificates of indebtedness so issued and delivered to Facer, Travell and others were by them transferred to the plaintiff's intestate.   Subsequently Facer, Travell and others executed and delivered

to plaintiff's intestate an assignment of an account for work, labor and services done and performed by them for Munn. The account so assigned by them respectively was for the same work, in the digging of the ditch, for which the certificates of indebtedness had been issued and delivered to them.

The commissioners have never made their assessment or collected any taxes thereon and the certificates have not been paid. It was conceded on the trial that at the time of the transaction both parties supposed that the certificates were good for the money.

This action is brought upon these assignments of accounts, and the plaintiff claims the right to recover the amount thereof of the defendant. It was contended by the plaintiff on the argument that the certificates of indebtedness issued by the drainage commissioners were void and worthless, for the reason that they had neglected to determine whether or not the ditch was necessary for the preservation of public health. It is possible that the proceedings are defective in this regard. (*In the Matter of the Application of David R. Ryers et al., for the Appointment of Commissioners, etc.,* 72 N. Y., 1 ; *Burk* v. *Ayers et al.,* 19 Hun, 17.) But this question I do not consider it necessary to determine. If we concede what the plaintiff claims in this regard, still I am unable to see how he can recover in this action. Munn was the first contractor and received his pay in these certificates. The written agreement, entered into by him with Facer, Travell and others, was to the effect that they should do certain work in the digging of the ditch ; that they should receive therefor a sum agreed upon, one-half of which should be paid them in cash, and the other one-half in these certificates. This agreement was strictly and fully performed on the part of Munn. The certificates were accepted by Facer, Travell and the other assignors of the claims in suit, in payment for the work performed by them under the contract. It is true that at that time all of the parties supposed that the certificates were good and valid, and that the money called for by them would be paid. The plaintiff's assignors, however, in entering into the agreement and in accepting the certificates, took their own chances in reference to their validity or payment.

The commissioners had been duly and legally appointed. They had taken the oath of office and entered upon the discharge of their

duties. They were authorized by the statute to issue certificates of indebtedness to pay their expenses in digging the ditch. The only defect is that the commissioners had not filed their determination that the drain was necessary to preserve the public health. The certificates were therefore the papers of third persons. They were not issued in payment of a precedent debt, but under the contract they were received as a part of the consideration, in accordance with its terms, for the services performed. In such a case they amount to a payment and satisfaction. The law in this regard appears to be well settled. In the case of *Gibson* v. *Tobey* (46 N. Y., 637) the rule was stated by CHURCH, Ch. J., as follows : " If a vendor of goods receives from the purchaser the note or bill of a third person, such note or bill will be deemed to have been accepted by the vendor in payment and satisfaction, unless the contrary be expressly· proved ; and in such a case the *onus* is upon the person receiving the paper ; but when such note or bill is received upon a precedent debt the presumption is that it was not taken in payment, and the *onus* of establishing that it was so received is upon the debtor." (To the same effect is *Gibson* v. *Tobey*, 53 Barb., 191 ; *Bates* v. *Cherry V., S. and A. R. Co.*, 3 Thompson & Cook, 16 ; same affirmed on the opinion of the General Term, 59 N. Y., 641 ; *Noel* v. *Murray*, 13 id., 167 ; *Keeler* v. *Salisbury*, 33 id , 648–653.)

The case of *Roberts* v. *Fisher* (43 N. Y., 159) is clearly distinguishable. In that case the note of Homer, Rice & Co. was delivered in payment and discharge of a precedent debt. Homer, Rice & Co. had failed before the note was delivered, so that at the time of its delivery it was worthless. The court in that case held that it was not a payment of the debt. This decision we do not regard as in conflict with the decision in the case of *Gibson* v. *Toby*, but directly within the rule as therein stated in reference to a precedent debt.

Again, it is contended on the part of the defendant that these certificates are valid and that payment of them can be enforced under the conceded facts in the case ; that if the commissioners have been guilty of negligence in the discharge of their duties they are personally liable. (*Olmsted* v. *Dennis*, 77 N. Y., 378.) Under the view I have taken of the case it does not become necessary to consider this question.

I regard these certificates as a part of the case and properly admitted in evidence. It perhaps was not material as to the manner in which the commissioners paid Munn for the digging of the ditch, but as part of the history of the case and as showing his relation to the parties, I fail to see how it did harm. The refusal of the court to permit the assignors to testify that they would not have taken the certificates unless they supposed they were good, if error was cured by the admission of the parties subsequently made, that each party received his certificates supposing it was good for the money.

I think that the motion for a new trial should be denied.

New trial granted, with costs to abide the event.